## TOYO KISEN KAISHA v. W. R. GRACE & CO.

No. 17640.

District Court, N. D. California, S. D. Feb. 17, 1931.

Knight, Boland & Christin, of San Francisco, Cal., for libelant.

Orrick, Palmer & Dahlquist, of San Francisco, Cal., for respondent.

ST. SURE, District Judge.

Libelant seeks to recover freight charges in the sum of $17,557.89, claimed to be due for a shipment of nitrate of soda by respondent on one of libelant's vessels from the ports of Antofagasta and Iquique, Chile, during the month of March, 1921, destined for Honolulu. The ship and cargo were destroyed by fire at sea.

In the early part of January, 1921, the agent of respondent in San Francisco contracted for the sale of some nitrate in Honolulu, and, in order to arrange for the transportation thereof from Chile to Honolulu, entered into negotiations with libelant's San Francisco office relative to the shipment of this nitrate on one of libelant's vessels. As a result of these negotiations a special freighting agreement was entered into, evidenced by the following letter:

"San Francisco, January 14, 1921.
"Toyo Kisen Kaisha S. S. Co., No. 625 Market Street, San Francisco.

"Gentlemen: Referring to telephone conversations during the past few days, we wish to confirm freight engagement with you as follows:

"2,500 long tons Nitrate of Soda March shipment per 'Tokuyo Maru' from Nitrate Port to Honolulu at $7.00 per ton of 2,240 lbs. gross weight delivered.

"Freight payable in San Francisco on receipt of weights from Honolulu.

"This cargo to be loaded according to custom of port in Chile and to be discharged at rate of D. 400 tons per day. 2000 tons to be discharged at railroad wharf, Honolulu, and 500 tons at Inter-Island Steam Navigation Co.'s wharf, which is adjacent to the railroad wharf and only necessitates the pulling ahead of the vessel.

"One-half (½) cost of weighing to be borne by the consignee at Honolulu and one-half (½) to be paid by vessel.

"All on board to be delivered.

"Kindly confirm on copy of this letter attached herewith.

"Yours very truly,
"W. R. Grace & Co.
"Traffic Department.
"K. Doi
"Confirmed:
"FPH:KR"

Thereupon respondent's San Francisco agent notified its Valparaiso office of this agreement in the following letters:

"Valparaiso House
"No. 4630    Jan. 14/21   13
"Nitrate of Soda Potash
" 'Tokuyo Maru' March

"We have arranged shipment of this parcel through the local office of the T K K on

the 'Tokuyo Maru' scheduled to sail from Nitrate Port about the middle of March, at a rate of freight of $7.00 per 2240 lbs. gross weight delivered, from Nitrate Port to Honolulu. Freight payable in San Francisco.

"This shipment is to be consigned to Pacific Guano & Fertilizer Co. loading at rate of 500 tons per day or better and discharge not to exceed 400 tons per day.

"Freight is payable in San Francisco on receipt of weights from Honolulu. In making up Bs/L we would ask you to kindly omit freight therefrom, and just let the same carry the clause 'freight as agreed.'

"W. R. Grace & Co.

"[Signed] F. P. Hughes,

"FPH:KR     Import Department."

"Valparaiso House

"No. 4634     Jan. 17/21   13

"Nitrate of Soda

"SS 'Tokuyo Maru'

"Our No. 4630

"We have sold for shipment by the 'Tokuyo Maru' scheduled to load early part or middle of March 500 tons Nitrate of Soda 95% to be shipped to F. A. Schaefer & Co. Honolulu; same terms and conditions concerning rates and payment of freight as given in our letter under reference.

"Care should be exercised to have this lot stowed separately from the Nitrate of Soda Potash. Heretofore we regret to state in previous shipments of both these commodities on the same boat they have become mixed and you will readily appreciate that when we do not obtain the full quantity of Nitrate of Soda Potash we also lose on account of its higher price.

"Yours very truly,

"W. R. Grace & Co.,

"[Signed] F. P. Hughes,

"FPH:KR     Import Department."

The letters of respondent's agent contain the only notice or advice the Valparaiso office of respondent ever had relative to the transaction. The instructions received with reference to freight were: "In making up Bs/L we would ask you to kindly omit freight therefrom, and just let the same carry the clause 'freight as agreed.' " With these instructions before him, the Valparaiso agent, in March, 1921, accepted two printed forms of bills of lading with the typewritten insertion in the margin, in one case, "Freight as per agreement," and, in the other, "Freight as agreed."

Libelant rests its whole case upon the bills of lading, and particularly upon the printed clause contained therein reading: "Said freight to be considered earned, lost or not lost." It is argued that this printed clause is a term of the contract of affreightment, binding upon respondent because of the acceptance of the bills of lading by respondent's agent in Valparaiso. It will be noted, in this connection, however, that the bills of lading omit freight rates, but contain the typewritten words in the margin thereof, "Freight as per agreement," and "Freight as agreed," in accordance with the written instructions above mentioned, and there is no doubt but that said typewritten words refer to the special agreement of affreightment entered into between the parties in San Francisco.

I am in accord with the contention of respondent, which is that the verbal agreement entered into and the letter confirming same written in San Francisco prior to the shipments of the nitrate from the Chilean ports constitute the agreement of affreightment, and that the bills of lading were merely receipts for the freight, given subsequently, and therefore, under the circumstances, are no part of the contract of affreightment. See Northern Pacific Rv. Co. v. American Trading Co., 195 U. S. 439, 25 S. Ct. 84, 49 L. Ed. 269; The Arctic Bird (D. C.) 109 F. 167.

The libel will be dismissed.